Myrna Grace **ZEPHIER**, Appellee,

**Arthur Harris, individually and on behalf of all others similarly situated,**

v.

Samuel R. **PIERCE**, Jr., in his capacity as Secretary of the United States Department of Housing and Urban Development; Thomas Feeney, in his official capacity as Area Director of the Minneapolis-St. Paul Area of the United States Department of Housing and Urban Development; Phillip A. Hagedorn in his official capacity as Executive Director of the Minneapolis Housing and Redevelopment Authority, Donald Hedquist and LeRoy Hedquist, Appellants.

**TRS Commerce Corporation, a Minnesota corporation; and Kevin W. Nordhausen.**

No. 83–1066.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1983.

Decided Aug. 19, 1983.

Eric J. Magnuson, John B. Lunseth, III, Rider, Bennett, Egan & Arundel, Minneapolis, Minn., for defendants-appellants.

M. Francesca Chervenak, Legal Aid Society of Minneapolis, Inc., Randall Smith, Minneapolis, Minn., for plaintiff-appellee.

Before HEANEY, Circuit Judge, and FLOYD R. GIBSON and ROSENN *, Senior Circuit Judges.

HEANEY, Circuit Judge.

Donald and LeRoy Hedquist appeal from the district court's award of attorneys' fees to Myrna Zephier pursuant to 42 U.S.C. § 1988. We reverse.

On January 13, 1981, Zephier agreed to rent an apartment from the Hedquists under a one-year Section 8 Existing Housing lease. On February 28, LeRoy Hedquist wrote Zephier a letter, which stated that her tenancy was being terminated as of March 31, 1981, because she had committed several violations of her rental agreement. The letter stated that if Zephier had not vacated the apartment by April 1, the Hed-

quists would institute a formal eviction proceeding, at which Zephier could appear and present a defense.

After speaking with Zephier about the termination, the Hedquists extended the termination date to April 30, 1981. On March 20, 1981, the Hedquists delivered their February 28 termination letter to the Minneapolis Housing and Redevelopment Authority (MHRA), the state agency charged with administering the Section 8 program. On April 16, Zephier's attorney wrote LeRoy Hedquist a letter advising him that federal law governed Zephier's tenancy under the Section 8 program. The attorney stated that *only* the MHRA had the authority to terminate a Section 8 tenancy, and then only after a hearing and a determination by the agency that there had been a "substantial" lease violation.[1] Accordingly, the letter stated that Hedquist's February 28 notice to Zephier had "no lawful effect." On April 23, 1981, Zephier's attorney wrote a similar letter to the MHRA.

The regulations promulgated by the Department of Housing and Urban Development (HUD), which the MHRA followed in establishing the procedures required for termination of Section 8 leases in Minneapolis, allowed a landlord to issue a termination notice simultaneously to the tenant and the MHRA. The notice had to state the grounds for eviction and advise the tenant that he or she had ten days to respond to the landlord and to present to the MHRA any objections to the proposed eviction. The MHRA conducted an informal investigation upon receipt of the notice, and if the MHRA approved the notice or failed to act within twenty days, the notice became effective and binding on the tenant. Zephier claimed that this procedure violated the statute and the due process clause and was thus invalid.

> [T]he [public housing] agency shall have the sole right to give notice to vacate, with the owner having the right to make representation to the agency for termination of tenancy.

---

\* The Honorable MAX ROSENN, United States Senior Circuit Judge, Third Circuit, sitting by designation.

1. Prior to amendment on August 13, 1981, 42 U.S.C. § 1437f(d)(1)(B) (1976) provided:

On April 29, 1981, the MHRA wrote the Hedquists, informing them that because the MHRA did not receive their notice until March 20, 1981, the MHRA's procedures were not followed, and the notice was invalid. The Hedquists took no further action. On May 5, 1981, Zephier instituted the present suit, alleging that the regulations concerning the termination of Section 8 tenancies, particularly 24 C.F.R. § 882.215, were contrary to federal statute and to the due process clause of the United States Constitution.[2]

On May 12, the district court issued a temporary restraining order, requiring that no action to evict Zephier be taken unless the MHRA determined after an informal hearing that good cause existed to terminate the lease. Good cause was defined as a material violation of the lease or a failure to pay rent. Under the court's order, the MHRA was required to issue the notice to vacate, and Zephier was required to abide by the terms of the lease. On June 18, 1981, the district court issued a preliminary injunction to the same effect.

In late summer, at Zephier's request, the Hedquists and Zephier entered into a Mutual Recission Agreement which provided that Zephier's lease would terminate August 31, 1981. Zephier failed to vacate the premises on September 1, however, so the Hedquists asked the MHRA how to proceed. The MHRA indicated that because the Section 8 lease was no longer in existence, the Hedquists were "on their own." The Hedquists then filed an unlawful detainer action in state court to evict Zephier, but they abandoned this action when the district court issued an order to show cause why they should not be found in contempt for violating the terms of the preliminary injunction. On September 31, 1981, Zephier moved to another Section 8 apartment.

Six months later, in March, 1982, Zephier filed a motion for attorneys' fees pursuant to 42 U.S.C. § 1988 (1976 & Supp. V 1981). The Hedquists obtained counsel to represent them on June 3, 1982. On June 12, the district court dismissed the case as moot and dissolved its preliminary injunction. The court indicated that its actions were based on two events: Zephier had moved and Congress had amended the federal law governing Section 8 tenancies to provide that in all leases entered into after October 1, 1981, "the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause." 42 U.S.C. § 1437f(d)(1)(B)(ii) (Supp. V 1981).

The court reserved the issue of attorneys' fees, and on December 8, 1982, it entered an order requiring the Hedquists to pay Zephier $4,344.89 in attorneys' fees.[3] The court held that Zephier's action was brought under 42 U.S.C. § 1983, the Hedquists were acting "under color of state law," and Zephier was a "prevailing party." It reasoned that even though there was never a final judicial decision on the merits of Zephier's case, the preliminary injunction provided Zephier with the relief she sought—the right to certain procedures prior to her eviction—and her claim was meritorious.

The Hedquists appeal. They assert that Zephier is not entitled to attorneys' fees under section 1988 because she failed to allege a civil rights claim in her complaint, she was not a prevailing party, and they did not act under color of state law.

Assuming that Zephier sufficiently alleged a section 1983 cause of action, we have serious doubt as to whether the Hedquists acted under color of state law. They did not utilize the termination procedures to evict Zephier: they did nothing after the

**2.** The complaint named the Hedquists, the Secretary and Area Director of the Department of Housing and Urban Development, the Executive Director of the Minneapolis Housing and Redevelopment Authority, and another landlord who had rented to a different Section 8 tenant as defendants.

**3.** This order was amended on December 20, 1982. The other parties to Zephier's action negotiated a settlement concerning the matter of attorneys' fees.

MHRA told them their letter did not conform to the procedures, except to indicate that they would seek to evict Zephier "as soon as the procedures for doing so [were] clarified." Supplemental Affidavit of Dara L. Schur in Support of Motion for a Preliminary Injunction, ¶ 4 (May 22, 1981). Moreover, they did not attempt to utilize the state court unlawful detainer proceeding to evict Zephier until she had requested, and entered into, a Mutual Recission Agreement, which dissolved the Section 8 lease completely.

■ We need not resolve the question of whether the Hedquists were state actors, however, because we are convinced that Zephier was not a "prevailing party" under section 1988. Zephier did prevail in the district court in the sense that she obtained a preliminary injunction which afforded her most of the procedural protections she sought, *see United Handicapped Federation v. Andre,* 622 F.2d 342, 346 (8th Cir.1980), but in our view the district court erred in granting the preliminary injunction. It thus necessarily erred in granting Zephier attorneys' fees.

When the district court issued its preliminary injunction on June 18, 1981, Zephier had been in her apartment over six weeks past the April 30, 1981, date which the Hedquists previously set for her eviction. Yet, the Hedquists had made no attempt to invoke state unlawful detainer procedures and had sent no new notice to vacate. Zephier filed an affidavit dated April 30, 1981, in support of her motion for a temporary restraining order which stated, "I am extremely concerned that my daughters and I will be forced to move out of our apartment by the end of April, 1981, and that if we have not moved by that date my landlord will file an unlawful detainer action to have us evicted." Affidavit in Support of Motion for Temporary Restraining Order and Preliminary Injunction, ¶ 8 (April 30, 1981).

Nevertheless, by the time the district court considered Zephier's motion for a preliminary injunction, Zephier's counsel had spoken with the Hedquists, who indicated that they were "ready and willing to comply with any due process hearing or procedure that is established in order to be able to evict Myrna Zephier." The Hedquists further stated that they intended to evict Zephier only "*as soon as the procedures for doing so are clarified.*" Supplemental Affidavit of Dara L. Schur in Support of Motion for a Preliminary Injunction, ¶¶ 3, 4 (May 22, 1981) (emphasis added). *See* Supplemental Affidavit of Dara L. Schur in Response to Defendant's Objections ¶¶ 4, 5, 7 (June 16, 1981).

There simply was no real threat of eviction to Zephier until *after* the court determined the proper Section 8 eviction procedures. The Hedquists agreed not to utilize the existing MHRA procedures, which Zephier was challenging, until the question of their validity was resolved by the court. They had taken no action after they were told by the MHRA, prior to the initiation of Zephier's lawsuit, that their February 28 termination letter was invalid. Because the preliminary injunction was unnecessary to prevent the Hedquists from taking action to evict Zethier, the Hedquists acted gratuitously in abiding by its terms. *See United Handicapped Federation v. Andre, supra,* 622 F.2d at 346.

Moreover, we note that Zephier was not "subject to irreparable injury in the form of loss of suitable housing * * * without minimum due process protections," as the district court held. Rather, she had the protections available in the MHRA's termination procedures. If the Hedquists had sent Zephier a valid termination notice, she would have had ten days to contest the proposed eviction with the MHRA and thirty days prior to the filing of an unlawful detainer action to present a motion to the district court. Zephier also had the protection of the unlawful detainer proceeding itself. Such a proceeding would have provided her with a hearing and another opportunity to present her defenses to the eviction.

■ Finally, even if Zephier was a prevailing party, this case presents special circumstances that render an award of attorneys' fees unjust. *See generally Williams v. Miller,* 620 F.2d 199, 202 (8th Cir.1980). Zephier's suit challenged the regulations

adopted by HUD and the procedures enforced by the MHRA for Section 8 lease terminations. The Hedquists were not represented by counsel until after the motion for attorneys' fees was filed, perhaps believing that their actions were not at issue and no money damages were sought from them. The district court dismissed the case as moot after Zephier voluntarily moved to another apartment and Congress amended the statute governing Section 8 lease terminations. An award of attorneys' fees under these circumstances would hardly be just. *Cf. Pernas v. Parkview Towers Management Corp.,* 502 F.Supp. 1099, 1106 (D.N.J. 1980) (attorneys' fee award to tenant not warranted where tenant challenged constitutionality of state statute and where her claims were dismissed as moot).

For all of the foregoing reasons, the judgment of the district court awarding attorneys' fees to Zephier pursuant to 42 U.S.C. § 1988 is reversed. Costs on appeal shall be assessed to appellees.